IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

SHIRLEY JACKSON,           :
                           :
    Plaintiff,             :
                           :
vs.                        :           CIVIL ACTION 11-0121-M
                           :
MICHAEL J. ASTRUE,         :
Commissioner of Social Security,:
                           :
    Defendant.             :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13-14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action (Doc. 20). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was twenty-nine years old, had completed a special high school education (though she did not graduate or pass the G.E.D. test) (Tr. 47, 52), and had previous work experience as a hair stylist and child care worker (*see* Tr. 63). In claiming benefits, Plaintiff alleges disability due to depression, back pain, and mild mental retardation (Doc. 14).

The Plaintiff protectively filed an application for SSI[1] on February 21, 2008 (*see* Tr. 15; Tr. 114-16). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she was unable to do her past

---

[1]The transcript also records a disability benefits application (Tr. 117-20), but that application has, apparently, not been pursued (*see* Tr. 15; *see also* Docs. 13-14).

relevant work, Jackson was capable of performing specified unskilled, light work (Tr. 15-33).  Plaintiff requested review of the hearing decision (Tr. 6-11) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Jackson alleges that:  (1) The ALJ erred in rejecting the opinion of Psychologist Donald W. Blanton; (2) the ALJ erred in finding that she did not meet the requirements of Listing 12.05B or 12.05C; (3) the ALJ erred in finding that she had the severe impairment of borderline intellectual functioning; and (4) the ALJ erred in relying on contradictory testimony from the vocational expert (hereinafter *VE*) (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 15).  The relevant[2] medical evidence of record follows.

On April 21, 2008, Psychologist Richard S. Reynolds examined Jackson who was oriented in four spheres (Tr. 196; *see generally* Tr. 195-98).  Plaintiff reported having experienced hearing music after eating certain foods, but Reynolds said that she was not very convincing.  Jackson was cooperative and her

---

[2]As Plaintiff's claims all relate to her mental impairments, the Court will not discuss the evidence which pertains to only the physical impairments.

thought associations were tight; thought content was logical. Plaintiff's affect was appropriate; recent and remote memory were fair. Judgment, insight, and decision-making abilities were intact for Jackson's level of intellectual functioning. Plaintiff took the WAIS-III on which she had a Verbal IQ score of 58, a Performance IQ score of 51, and a Full Scale IQ of 50. The Psychologist indicated that he considered the results to be invalid as "Jackson did not appear to put forth appropriate effort and motivation and actually appeared to intentionally miss certain test items" (Tr. 197).

Plaintiff was first seen at the Cahaba Center for Mental Health on May 20, 2008 by Wayne Williams, M.A. and LPC, whose initial impression was mild mental retardation and dysthymic disorder with psychomotor features (Tr. 228). Jackson was seen by Dr. Timothy S. Baltz, Psychiatrist, on August 11, who had the impression that she suffered from early onset Dysthymic Disorder, probable borderline IQ, and a possible slight post-concussion syndrome; he prescribed Lexapro[3] and a sleeping medication (Tr. 226-27). On September 17, Baltz continued the medications and affirmed the previous diagnosis (Tr. 217-18).

---

[3] *Lexapro* is indicated for the treatment of major depressive disorder. **Error! Main Document Only.**  *Physician's Desk Reference* 1175-76 (62nd ed. 2008).

4

On February 18, 2009, the Psychiatrist indicated that Jackson had been non-compliant with her medications; he re-prescribed the Lexapro and a sleeping medication (Tr. 216). At the time of the next examination, June 17, 2009, Plaintiff was more talkative and seemed to have gained a little weight; prescriptions were continued (Tr. 215).

Jackson was seen on September 2, 2009 by Psychologist Donald W. Blanton who stated that Plaintiff's "mental retardation was obvious;" the Psychologist noted that her "thoughts and conversation were simple but logical" (Tr. 223; see generally Tr. 222-25). There was no confusion and although Jackson denied anxiety, she was particularly restless; her mood was depressed. Blanton noted psychomotor retardation; she was alert and oriented in four spheres. Insight was limited and judgment was fair. Plaintiff took the Wechsler Adult Intelligence Scale-IV on which she received a Full Scale IQ score of 57, placing her in the mild range of mental retardation. On the Wide-Range Achievement Test (Revised-III), Jackson scored at the one percentile level. Blanton indicated that he thought the testing scores were valid. The Psychologist's diagnostic impression was that she suffered from

---

dysthymic disorder and mild mental retardation and that she had a GAF of 50.[4] Blanton went on to find that Plaintiff's mental retardation was a lifelong condition and that she had been depressed for at least a year. He expressed the opinion that she would be markedly limited in her ability to do the following: understand and remember simple instructions; carry out simple instructions; remember detailed or complex instructions; respond to customary work pressure; use judgment in detail or complex work-related decisions; and maintain concentration and pace for at least two hours.

At the evidentiary hearing before the ALJ, Jackson testified that she was twenty-nine years old and that although she had a driver's license, she did not drive because she was drowsy all of the time (*see generally* Tr. 40-59, 60-62). She had worked as a babysitter and an Avon salesperson. Plaintiff had lower back pain for which she took over-the-counter medications as she had no health insurance. Her pain is a seven on a ten-point scale, causing her to lie down four-to-five hours a day; this makes her tired. She also gets headaches every

---

[4]**Error! Main Document Only.**"A GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-work)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994).

other day, making her lie down.  Jackson stated that she got a certificate for completing high school, in special education; she never passed the G.E.D.  She eats a lot because she is depressed; her medications make her sleepy and drowsy.  During the day, all she does is sleep and watch TV; she does no chores around the house because she has no energy.  Jackson has trouble sleeping at night.  Plaintiff sees Dr. Baltz at the mental health center because her mother thought she needed some help.

Dr. Robert Beatles, testifying as a VE, stated that Jackson's past work would be classified as a hair stylist and child care worker, both light work jobs (Tr. 58-60, 62-67).  The ALJ then posed a hypothetical question of the VE about specific jobs Plaintiff would be able to perform.[5]

The ALJ, in his decision, determined that Plaintiff had the severe impairment of Borderline Intellectual Functioning which failed to meet the requirements of any Listing (Tr. 15-33).  The ALJ determined that Jackson had

> the residual functional capacity to perform
> a range of light[6] work as defined in 20

---

[5] The Court will set this information out in greater detail in discussing Plaintiff's fourth claim.

[6] **Error! Main Document Only.** Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some

>     C.F.R. 416.967(b). In particular, the
>     claimant can occasionally lift twenty
>     pounds, frequently lift ten pounds, and
>     stand and/or walk for six hours. The
>     claimant can frequently climb, bend,
>     balance, stoop, kneel, crouch, and crawl.
>     The claimant can frequently climb ramps or
>     stairs; however, she should never climb
>     ladders, ropes, or scaffolds. The claimant
>     should avoid all exposure to hazardous
>     conditions, such as unprotected heights or
>     dangerous machinery. Additionally, the
>     claimant is limited to simple routine tasks
>     involving no more than simple, short
>     instructions, and simple work-related
>     decisions with few work place changes. The
>     claimant can have occasional interaction
>     with the public; frequent interaction with
>     co-workers; and frequent interaction with
>     supervisors. The claimant should have no
>     requirement to read instructions or write
>     reports.

(Tr. 19) (footnote in original). The ALJ summarized Jackson's testimony but found that objective findings failed to support her symptoms and limitations (Tr. 21, 28). The ALJ went on to summarize the medical evidence of record, specifically discounting the opinion of Psychologist Blanton (Tr. 29). Finding that she was unable to perform her past relevant work, the ALJ listed specific jobs, as testified to by the VE, which

---

pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a person must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for a long period of time.

Jackson would be able to do.  This concludes the record evidence.

Plaintiff first claims that the ALJ erred in rejecting the opinion of Psychologist Blanton (Doc. 13, pp. 5-6).  The Court notes initially that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[7] *see also* 20 C.F.R. § 404.1527 (2010).

The ALJ found that "Dr. Blanton's opinion is not entitled to great weight, because it contrasts sharply with the other evidence of record from the claimant's treating physician, which renders it less persuasive" (Tr. 29).  The ALJ went on to note that the examination was apparently rendered "with an effort to generate evidence for the current appeal" (*id.*).  While the Court finds the latter reason to be speculative, the Court, nevertheless, finds it to be, at most, harmless error.

The Court notes that Blanton's opinion is in stark contrast to the opinion of Psychologist Reynolds who found Jackson to be

---

[7]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to

intentionally trying to skew the test results.  The behavior

Reynolds described is not inconsistent with statements made by

Plaintiff regarding self-employment income in 2008 (Tr. 126-27;

*cf.* Tr. 43, 63-64; *see also* Tr. 17) and the length of time she

worked as an Avon salesperson (Tr. 138; *cf.* Tr. 61-62).

In any event, Blanton's opinion of marked limitation finds

no support anywhere else in the record.  Plaintiff's treating

psychiatrist found no such restrictions.  The Court finds

substantial support for the ALJ's rejection of Psychologist

Blanton's opinion.

Jackson next claims that the ALJ erred in finding that she

did not meet the requirements of Listing 12.05B or 12.05C (Doc.

13, pp. 6-7).  The introductory notes to Section 12.05 state

that "[m]ental retardation refers to a significantly subaverage

general intellectual functioning with deficits in adaptive

behavior initially manifested during the development period;

*i.e.*, the evidence demonstrates or supports onset of the

impairment before age 22."  20 C.F.R. Part 404, Subpart P,

Appendix 1, Listing 12.05 (2010).  Listing 12.05B requires "[a]

valid verbal, performance, or full scale IQ of 59 or less."  20

C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05B (2010).

---

October 1, 1981.

Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2010).

The Court notes that although the regulations require that Plaintiff demonstrate that she suffered "deficits in adaptive behavior" before she turned twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2004), the Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), has held "that there is a presumption that mental retardation is a condition that remains constant throughout life." The *Hodges* Court further held "that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." *Hodges*, 276 F.3d at 1266.

Plaintiff has argued that the ALJ failed to take the *Hodges* presumption into consideration. Specifically, she argues that the Listing requirements have been met as demonstrated by her poor academic achievement, home living skills, and self-care and health skills (Doc. 13, p. 7).

11

In his decision, the ALJ admitted that, "[a]t first glance, it might be argued that the claimant meets Medical Listing 12.05" (Tr. 18). He went on to find, though, that "the medical evidence does not include any objective evidence establishing that the claimant was diagnosed with mental retardation prior to age 22" (*id.*). The ALJ went on to note that Jackson's activities of daily living, her caring for her children, and her provision of daycare services refuted any assertion that she had demonstrated sufficient deficits in adaptive functioning (*id.*).

The Court finds substantial support for the ALJ's conclusion. While *Hodges* does provide a presumption of lifelong mental retardation, it is a rebuttable presumption. The things to which Jackson points as support for her argument are self-reported and found to be non-credible by the ALJ, a finding not challenged by Plaintiff in this action. Furthermore, the ALJ has correctly pointed out that Jackson has participated in activities that demonstrate that she did not suffer the adaptive functioning deficits necessary to meet Listing requirements. Jackson's claim that she meets the Listing is without merit.

Plaintiff also claims that the ALJ erred in finding that she had the severe impairment of borderline intellectual functioning (Doc. 13, pp. 7-8). Jackson argues that her IQ

12

scores belie the finding that she functions at such a high level.

It is true, as Plaintiff argues, that Dr. Baltz did not make a definitive diagnosis as he consistently indicated that she had "probable borderline IQ" (Doc. 13, p. 7; *cf.* Tr. 215-17, 227). What is more important to this discussion, though, is that the Psychiatrist did not find that Jackson was mentally retarded. As pointed out by the ALJ, the record evidence demonstrates that Plaintiff has functioned at a higher level than a mentally retarded person would function. Even if the results from the IQ test given by Blanton are valid, Jackson has greater abilities than would be expected by the test results. Ultimately, these abilities are more important than the test results. Plaintiff's claim otherwise is without merit.

Finally, Jackson claims that the ALJ erred in relying on contradictory testimony from the VE (Doc. 13, p. 8). Plaintiff is referring to a hypothetical question posed by the ALJ which queried as follows:

> If you consider a person the claimant's age, education, past relevant work, and the hypothetical individual is limited to light exertional level with lifting and carrying abilities of 20 pounds occasionally, ten pounds frequently, standing/walking six hours in an eight hour work day. Further,

>           that this hypothetical individual would be
>           limited to frequent climbing, bending,
>           balancing, stooping, kneeling, crouching,
>           and crawling; frequent ramps and stairs; no
>           ladders, ropes, or scaffolds; no exposure to
>           hazardous conditions such as unprotected
>           heights, dangerous machinery; would be
>           limited to simple routine tasks involving no
>           more than simple, short distractions, simple
>           work-related decisions with few work place
>           changes.  Further, that this person would be
>           limited to occasional interaction with the
>           public, frequent interaction with coworkers
>           and supervisors.  There would be no
>           requirements to read instructions or write
>           reports in any of those jobs.  Would this
>           hypothetical individual be able to perform
>           any of the past relevant work of the
>           claimant?

(Tr. 64-65).  The VE noted that requiring simple work would eliminate semi-skilled work and stated that Jackson would not be able to do her past work (Tr. 65).  When queried by the ALJ if there were other jobs which met the hypothetical, the VE listed sewing machine operator, poultry worker, and shirt presser (Tr. 65-66).

Plaintiff's claim focuses on the fact that the job of sewing machine operator is a semi-skilled position, as acknowledged by the VE, and that the ALJ adopted the VE's testimony as his own, finding that Jackson could perform these three types of jobs (Doc. 13, p. 8; *cf*. Tr. 33).

The Court finds that this is harmless error.  As the VE

14

listed two other jobs, poultry worker and shirt presser, which are not semi-skilled, the ALJ met his burden of showing that there are jobs in the economy which Plaintiff can perform.  The ALJ's listing of the sewing machine operator position, though an error, is of no moment in light of the other findings.

Jackson has raised four claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 24th day of August, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE